**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

**CIVIL ACTION NO. 11-132-JBC**

**CONNIE GILVIN,**                                                                       **PLAINTIFF,**

**V.**                 **MEMORANDUM OPINION AND ORDER**

**MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,**                                           **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on cross-motions for summary judgment on plaintiff Connie Gilvin's appeal of the Commissioner's denial of her application for supplemental security income and disability insurance benefits (R. 8, 10). Gilvin brought this action pursuant to 42 U.S.C. 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The court, having reviewed the record and being otherwise sufficiently advised, will grant the Commissioner's motion and deny Gilvin's motion.

**I. FACTUAL BACKGROUND**

The plaintiff, Connie Gilvin, filed an application[1] for supplemental security income and disability insurance benefits on October 29, 2007. Gilvin alleges disability beginning on July 15, 2007, for "constant pain" stemming from "COPD,

---

[1] Gilvin filed a prior application in 1996 that was eventually abandoned. A.R. 50. The ALJ attempted to obtain a copy of that decision without success and therefore was unable to consider the prior decision. *Id*. Gilvin did not raise this issue either at the time of the ALJ's decision or in her brief to this Court.

fibromyalgia, disc problems, hep c, jaw problems." A.R. 150. The claim was denied initially on December 3, 2007, and upon reconsideration on June 9, 2008. Thereafter, Gilvin filed a written request for a hearing on August 5, 2008. Gilvin appeared before the Administrative Law Judge ("ALJ") in Lexington, Kentucky, and testified along with an impartial vocational expert, Daryl Martin. A.R. 1-22. Gilvin, who was forty-four at the time of the hearing, testified that she had a twelfth-grade education and that prior to her disability she worked as a day-care worker. A.R. 6. She alleged disability due to joint problems and pains throughout her body, fibromyalgia and major depression. A.R. 8. The vocational expert, Martin, testified that Gilvin would not be able to return to her past work as a daycare worker, but that she would be able to do a number of cleaning and packaging type jobs in the national economy. A.R. 19-20.

## II. THE ALJ'S DETERMINATION

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. §§ 404.1520, 416.920; *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003). In this case, at Step 1, the ALJ found that Gilvin had not engaged in substantial gainful activity since the application date. A.R. 53. At Step 2, the ALJ found that Gilvin had a combination of severe impairments: temporomandibular joint dysfunction, fibromyalgia, hepatitis C, a generalized anxiety disorder, a depressive disorder, and a dependent personality disorder. *Id*. At Step 3, the ALJ found that Gilvin did not have an impairment or combination of impairments that meets or equals

2

an impairment listed in 20 C.F.R. Part 404, Appendix 1. *Id*. Thus, the ALJ could not find that Gilvin was disabled on that basis. The ALJ then proceeded to Step 4. At that stage, the ALJ determined that Gilvin was unable to perform any past relevant work, specifically that of a daycare worker. A.R. 60. However, in Step 5, in considering her age, education, work experience and residual functional capacity the ALJ concluded that significant jobs existed in the national economy that Gilvin could perform, such as cleaner and packager. *Id*. at 61.

The ALJ issued a decision on February 24, 2010, finding that Gilvin was not disabled and therefore not entitled to supplemental security income or disability insurance benefits. A.R. 62. On February 24, 2011, the Appeals Council denied Gilvin's request for review and the ALJ's decision became the final decision of the Commissioner of Social Security. A.R. 23. Gilvin then filed this action for judicial review in this court pursuant to 42 U.S.C. § 405(g).

## III. LEGAL ANALYSIS

Gilvin claims the Commissioner's decision was not supported by substantial evidence for five reasons: (1) the ALJ failed to give great weight to the opinion of the treating physician; (2) the ALJ did not give adequate reasoning as to why he discounted the opinions of the treating doctor; (3) the ALJ failed to consider the cumulative effect of all the claimant's symptoms, physical as well as mental, on her capacity to engage in gainful employment; (4) the ALJ failed to consider whether the claimant could perform such work activities in light of her physical and emotional

3

state that would allow her to hold a job for a significant period of time; and (5) the ALJ has a duty to investigate the facts and develop arguments both for and against granting benefits (R. 8 at 2). Gilvin fails to cite to the record or provide explanatory statements regarding her contentions. Normally, the court will not engage in guesswork or make arguments for the plaintiff. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2006). Nevertheless, for the following reasons, the ALJ's decision was supported by substantial evidence and must be upheld.

A treating physician's medical opinion is entitled to controlling weight if it is (1) "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in [the plaintiff's] case record." 20 C.F.R. 404.1527(d)(2); *see also Jones*, 336 F.3d at 477 ("If the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her rejection." (citing *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987))). In this case, Gilvin argues that the ALJ discounted the opinions of her treating physicians, Dr. Paul Goldfarb, Dr. Eric Bradburn, and Dr. Toni Hall. *See* R. 8 at 4. However, Gilvin fails to provide any specific contention regarding how the ALJ discounted or discredited those opinions. Rather, Gilvin merely states "[t]hey treated her for mental health problems and physical problems from which she suffered for a long period of time." R. 8 at 5. Contrary to Gilvin's unsupported assertion, the ALJ

4

stated that he relied in part on the opinion of Dr. Goldfarb, who treated the claimant for fibromyalgia. A.R. at 57. In addition, the ALJ relied on the opinion of Dr. Sprague, who diagnosed Gilvin with "generalized anxiety disorder, a depressive disorder, and a dependent personality disorder." *Id*. The ALJ did not discount these opinions, but found instead that Gilvin's statements regarding the intensity and severity of her symptoms were not credible and did not preclude her from work-related activities. *Id*. at 57-58. Gilvin has not shown how a different conclusion is warranted. *See Hollon*, 447 F.3d at 490 ("declin[ing] to broadly scrutinize any and all treating physician opinions in the record to ensure that they are properly accounted for in the ALJ's decision.").

The ALJ properly discounted the testimony of Dr. Bradburn, who opined that Gilvin was unable to work an eight-hour day. The ALJ rejected this opinion, stating that the doctor's own treatment notes fail to support these limitations. A.R. at 60. Moreover, Dr. Bradburn, in his own notes, concluded, "I am not really qualified to determine limitations and assessment of disability." A.R. 470. The ALJ is permitted to give more weight to the opinion of a specialist rather than a non-specialist. 20 C.F.R. §§ 404.1527(d)(5); 416.927(d)(5). *See also Payne v. Astrue*, WL 1768843 (N.D. Ohio 2011)(noting that the specialization of the treating source is one factor for the ALJ to consider in determining how much weight to assign to the treating physician's opinion). In addition, Dr. Bradburn severed his relationship with Gilvin after a positive drug screen, commenting that "she is frequently impaired,

5

and the screening clearly indicates that she is not using her medications in a controlled fashion." Therefore, the ALJ was justified in discounting the opinion of Dr. Bradburn.

Gilvin does not explain how the ALJ failed to consider the opinion of Dr. Hall. A review of the record reveals that the ALJ's decision and opinion actually does not mention or refer to Dr. Hall. *See* A.R. 47-62. Therefore, it is impossible to conclude whether the ALJ relied on or discounted this opinion.

In her third issue, Gilvin argues that the ALJ failed to consider the cumulative effect of her impairments in determining her residual functional capacity ("RFC") (R. 8 at 5). In support, Gilvin merely makes three citations to the administrative record with no argument or explanation. These citations refer to medical notes from Dr. Mark Dougherty regarding a Hepatitis C diagnosis (A.R. 208-210), miscellaneous medical records from Dr. Toni Hall at Bluegrass Regional Mental Health/Mental Retardation Board Inc. (A.R. 587-597), and the RFC questionnaire filled out by Dr. Bradburn (A.R. 465-472). Again, by merely listing citations to the record without any argument, Gilvin does not explain how the ALJ failed to consider the cumulative effect of her impairments. Therefore, the court will not attempt to formulate an argument for her. *See Hollon*, 447 F.3d at 490.

Moreover, the record reflects that the ALJ did consider her impairments. The ALJ found that Gilvin had a "history of temporomandibular joint dysfunction," citing medical evidence of Dr. James; noted a positive hepatitis C diagnosis by her treating

6

physician Dr. Goldfarb; and stated that Gilvin's allegations of mental impairments, including a "depressive disorder" and "dependent personality disorder, are supported by medical evidence in the record." A.R. at 57. The ALJ went on to find Gilvin's "impairments can reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible." A.R. 57. Thus, the ALJ considered and apparently accepted the evidence regarding Gilvin's alleged impairments, just not to the degree of finding a permanent disability.

In her fourth issue, Gilvin appears to argue that the ALJ erred in finding that she could perform jobs in the national economy. Gilvin argues in support that she could not "possibly maintain a job" citing *Gatliff v. Comm'r of Soc. Sec.*, 172 F.3d 690 (9th Cir. 1999)(concluding that claimant, who was unable to hold a job for more than a period of two months, was not capable of substantial gainful activity and therefore entitled to social security and disability benefits). *Gatliff* is distinguishable; Gilvin does not cite to any evidence in the administrative record in support of her argument that she cannot hold a job for a significant length of time. In this case, the ALJ determined that although Gilvin did have "some limitations" in her ability to perform work-related activities, the medical evidence did not totally preclude her from doing so. A.R. at 57. The ALJ relied on the testimony of the vocational expert, who testified that Gilvin would be able to perform the requirements of occupations such as cleaner or packager. A.R. at 61. In *Gatliff*, the ALJ had evidence in the medical

record showing a work history pattern in which the claimant could perform a job for a duration of only two months. *Gatliff*, 172 F.3d at 692. The instant administrative record contains no such evidence, nor does Gilvin provide any argument in support of her contention.

Finally, Gilvin's fifth issue is actually a statement of law rather than an argument. Gilvin correctly states that the ALJ has a duty to investigate the facts and develop arguments both for and against granting benefits (*See* R. 8 at 2) (citing *Sims v. Apfel*, 530 U.S. 103 (2000) and *Richardson v. Perales*, 402 U.S. 389 (1971)). Lacking substance, this matter presents nothing for the court to address.

## IV. CONCLUSION

The ALJ's determinations were supported by substantial evidence in the record. Accordingly, **IT IS ORDERED** as follows:

(1) the Commissioner's motion for summary judgment (R. 10) is **GRANTED**;

(2) Gilvin's motion for summary judgment (R. 8) is **DENIED**.

A separate judgment will issue.
Signed on November 7, 2011

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY